UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SUZANNE M. DARGE,

 Plaintiff,

 v.                   Case No. 23-CV-1201-SCD

MARTIN J. O'MALLEY,

 *Commissioner of the Social Security Administration,*

 Defendant.

## DECISION AND ORDER

  Suzanne Darge applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* After the Social Security Administration denied Darge's application, she filed this action seeking judicial review of the Commissioner's decision. For the reasons that follow, I will affirm the denial of disability benefits.

## BACKGROUND

  Darge applied for social security benefits in 2021, alleging disability as of her last date of employment—October 28, 2019. R. 143, 163. The state agency charged with reviewing the applications on behalf of the Social Security Administration denied Darge's claim initially and upon her request for reconsideration. R. 78, 89.

  After the state agency denial, Darge telephonically appeared with counsel for a hearing before an ALJ. R. 35–55. Darge testified to the following: She has a ninth-grade education and worked in picking/packing and assembling for a farm parts factory for about fifteen years prior to her alleged disability onset date. R. 42–43. As a picker/packer, Darge lifted up to one-

hundred seventy-five pounds with the assistance of drivelines. R. 42. She lifted up to forty pounds and could sit or stand as an assembler. R. 43. She was in the process of a divorce and receiving financial support from her family and her husband "whenever he can or wants to." R. 44. Her husband quit his job the week prior to the hearing, leaving her without insurance. R. 49. She was taking pain medication for muscle spasms and engaged in a variety of personal care and household activities without assistance. R. 47–48. Darge was experiencing ongoing pain in her lower back and the top of each of her legs, but added that "every now and then, it's my right shoulder." R. 46. Since she had been packing to move at the time of the hearing, Darge's right shoulder was "very painful" and hurting "24/7." R. 46. Darge broke her right shoulder a "couple"[1] years prior and had been having issues with it since then. R. 46. She received a shot three years prior that helped for a while but had not seen a doctor for it recently because she did not currently have insurance. R. 46. She could not lift anything more than a gallon of milk, specifically because of the pain in her leg and back. R. 50, 51.

While Darge's request for judicial review centers around her shoulder pain and limited reaching capacity, Darge did not discuss difficulty reaching or limited shoulder range of motion during the hearing with the ALJ. *See* R. 35–55. Darge did, however, allege difficulty reaching on her function report. R. 181. On her work history report, Darge described her role in yoke assembly without any apparent reaching requirements. R. 174 (detailing how she would handle parts and leaving blank the line for number of hours spent reaching each day). She described her subsequent job in the "aftermarket" department as "very heavy and strenuous" but likewise did not mention reaching. R. 173, 175.

---

[1] Darge reported to medical providers that she fractured her shoulder around 2007 or 2008. R. 259, 266, 404.

2

Darge also provided clinical notes reflecting that a doctor diagnosed her with shoulder impingement and administered a cortisone injection into her right shoulder on July 3, 2019. R. 259–60. A nurse practitioner's exam on April 22, 2021, indicates that Darge's shoulder range of motion was bilaterally reduced to ninety degrees. R. 512. The nurse did not expound upon this condition but summarily listed bilateral adhesive capsulitis[2] of the shoulders, among other assessment findings. R. 512. Five days later—on April 27, 2021—Darge saw Dr. James Bencivenga for a consultative exam in connection with her application for social security benefits. R. 462–66. Dr. Bencivenga found that Darge performed active range of motion in her shoulders to ninety degrees, moved the left shoulder twenty degrees and minimally moved the right shoulder with external rotation, and exhibited good strength with external rotation. R. 464. According to Dr. Bencivenga's notes, Darge identified pain in the right shoulder only after testing, and an x-ray of Darge's right shoulder revealed no fracture or dislocation. R. 464. Dr. Bencivenga opined that the "lack of external rotation would suggest adhesive capsulitis has developed." R. 464–65. Regarding Darge's ability to perform work functions, Dr. Bencivenga concluded:

> Based on the diagnoses above[,] there is not a substantial risk of further injury that would require restrictions.
>
> Ms. Darge did have limited range of motion on exam today. This may be related to adhesive capsulitis. There isn't sufficient objective evidence on xrays to explain the lack of range of motion. Therefore, it may just be an effort to avoid pain.
>
> Most of the impairment claimed by Ms. Darge is pain related. Pain is self-reported and reviewed above and in other documentation.

---

[2] "Adhesive capsulitis, commonly known as frozen shoulder, is an inflammatory condition causing shoulder stiffness and pain." "Adhesive Capsulitis," National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK532955/ (last accessed September 10, 2024).

R. 465. Both state agency reviewing physicians—Pat Chan, M.D. and Marc Young, M.D.—opined that Darge retained the capacity for work at the medium exertional level upon their respective examinations in May 2021 and May 2022. R. 61, 71. In fact, Dr. Young stated that he tested Darge's range of motion with respect to her lumbar spine and shoulders, and he specifically found that the consultative examiner's opinion was an "overestimate of the severity" of Darge's restrictions/limitations. R. 71.

Edward Pagella also testified at the hearing before the ALJ as a vocational expert (VE). R. 51–54. Pagella explained that Darge's past work as an assembler is classified at a medium level of physical tolerance per the Dictionary of Occupational Titles (DOT) but that it was "very heavy" as performed by Darge. R. 52. According to Pagella, Darge's work as a picker/packer carries a medium physical tolerance per the DOT and as performed by Darge.[3] R. 52. Pagella advised that a hypothetical person with Darge's RFC could perform her past work as a picker/packer but could only perform the work of an assembler as generally performed, not as Darge performed it. R. 53. If the RFC was reduced to a light or sedentary exertional level, the hypothetical person could not perform Darge's past relevant work. R. 53. Neither the ALJ nor Darge's lawyer questioned Pagella regarding reaching. R. 51–53.

In January 2023, the ALJ issued a written decision denying Darge's disability application. R. 17–31. The ALJ considered the application under 20 C.F.R. § 404.1520(a), which sets forth a five-step process for evaluating disability insurance claims. R. 18. At step one, the ALJ found that Darge had not engaged in substantial gainful activity since her alleged onset date. R. 19. At step two, the ALJ determined that Darge had the following severe

---

[3] The VE appears to have misstated which job Darge performed at the "very heavy" exertion level rather than as generally expected. *Compare* R. 42, *with* R. 52–53. Either way, the VE's conclusion remains that Darge could perform both of her past relevant jobs as generally performed at the medium exertional level. R. 52–53.

4

impairments: lumbar spondylosis and spondyloarthropathy, right shoulder osteoarthropathy, adhesive capsulitis of the shoulders, obesity, depression, and anxiety. R. 19. At step three, the ALJ found that Darge did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. R. 20–23. Then, the ALJ determined Darge's residual functional capacity (RFC)—that is, the most she could do despite her physical and mental limitations, *see* 20 C.F.R. § 404.1545(a). In this regard, the ALJ concluded that Darge could "perform medium work as defined in 20 CFR 404.1567(c) except she can occasionally climb, stoop, crouch, kneel, and crawl. The claimant can understand, remember, and carry out simple instructions. She requires regular work duties and expectations with only occasional changes." R. 23.

Ultimately, the ALJ determined at step four that Darge could perform past relevant work as an assembler and as a picker/packer. R. 30–31. Therefore, the ALJ did not reach step five of the analysis and determined that Darge was not disabled at any time since she applied for benefits. R. 31. The Social Security Administration's Appeals Council subsequently denied Darge's request for review, R. 1, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

In September 2023, Darge filed this action seeking judicial review of the Commissioner's decision denying her claims for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 2, 3, 5. Darge filed a brief in support of her disability claim, ECF No. 12; the

Commissioner filed a brief in support of the ALJ's decision, ECF No. 21; and Darge filed a reply brief, ECF No. 24.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, the court must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Darge alleges two shoulder-related errors in the ALJ's decision: (1) that the ALJ's assessment of her subjective allegations of reaching limitations is not supported by substantial evidence, and (2) that the ALJ failed to account for a reaching limitation when formulating the RFC. ECF No. 12 at 6, 12. The Commissioner maintains that the ALJ reasonably evaluated Darge's subjective symptoms and that the record does not compel a reaching restriction. ECF No. 21 at 4, 8. I will address these two alleged errors together because they are interrelated and pertain to the same section of the ALJ's decision. *See* R. 27.

### I. Shoulder Impairments: Subjective Allegations and RFC

Beginning with the decision itself, the ALJ concluded that Darge's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that Darge's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 26. With respect to Darge's right shoulder osteoarthropathy and adhesive capsulitis of the shoulders, the ALJ specifically noted four reasons that the medical evidence did not support her symptoms and limitations: (1) treatment was limited to one cortisone injection, (2) diagnostic findings were characterized as mild and stable, (3) treatment records consistently demonstrated good function on examination despite longstanding symptoms, and (4) Darge demonstrated good function at the April 2021 consultative exam. R. 27. This evaluation is far from unsupported. And a reviewing court "will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is 'patently wrong, which means that the decision lacks any explanation or support.'" *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024)

(quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). Nevertheless, Darge maintains that the ALJ's rationale constitutes legal error.

For example, she contends that the ALJ did not adequately explain how she considered Darge's reason for such limited shoulder treatment (i.e., lack of insurance). ECF No. 12 at 7–8. After all, the ALJ mentioned—separately from the RFC and subjective symptom analysis—that Darge lost insurance when her husband quit his job the week prior to the hearing. R. 24. But the record also reflects that Darge advised several providers in 2021 and 2022 that she did not pursue certain treatments and medications—though none related to her shoulder—due to lack of insurance and financial difficulties. *See* R. 99, 171, 188, 476, 509, 523, 542. The ALJ's decision leaves the impression that Darge only lacked insurance at the time of the hearing and, even then, does not consider whether that factor impacted Darge's limited shoulder treatment. Therefore, I agree that the ALJ failed to adequately explain this consideration. *See* Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1020935, at *14168 (Mar. 16, 2016) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").

Darge also argues that the ALJ improperly cited "mild and stable" diagnostic findings because they are immaterial to adhesive capsulitis, which generally does not appear on x-rays. *See* "Adhesive Capsulitis," National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK532955/ (last accessed September 10, 2024) ("There is no specific laboratory testing indicated for the diagnosis of adhesive capsulitis."). Similarly, Darge maintains that the exams cited by the ALJ as demonstrating good function

8

actually do not undermine Darge's subjective complaint of shoulder pain and limited reaching capacity because the cited exams pertain to irrelevant time periods or unrelated physical exams. ECF No. 12 at 9–12. While the Commissioner disagrees with Darge's characterization of the record, he responds that, at minimum, the ALJ could not have erred because she already found Darge more limited than any medical source in the record. ECF No. 21 at 3 (citing *Recha v. Saul*, 843 F. App'x 1, 5 (7th Cir. 2021) ("An ALJ does not commit an error when 'there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.'") (citations omitted)).

The Commissioner's stance is problematic because, although the consultative examiner did not explicitly recommend any restrictions, his report does suggest that an improper standard could have been at play. *See* R. 465. During the consultative exam, Dr. Bencivenga observed limited shoulder range of motion and noted the possibility of adhesive capsulitis in Darge's shoulders. R. 465. Dr. Bencivenga then officially opined that no restriction was necessary to prevent "substantial risk of further injury." But injury prevention—and "substantial" risk at that—does not necessarily mean that Darge did not have pain preventing her from performing at full capacity. *See* R. 465; 20 C.F.R. § 1545(a)(1) (advising that RFC means "the most" a claimant can still do despite his or her limitations). That's a different standard. Moreover, the ALJ did not even mention the possibility of limited shoulder range of motion when citing a "consistent" history of good function to reject the extent of Darge's symptoms and craft the RFC. *See* R. 27. Because the ALJ failed to wrestle with Darge's financial concerns and history of potentially limited function, I find the ALJ failed to build the "accurate and logical" bridge from the evidence to her conclusion about Darge's shoulder-related symptoms and RFC. *See Beardsley*, 758 F.3d at 837.

## II. Harmless Error

Under the harmless-error doctrine, remand is not required if the reviewing court "can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707–08 (7th Cir. 2013) (citations omitted). "[T]he harmless error standard is not . . . an exercise in rationalizing the ALJ's decision and substituting [the reviewing court's] own hypothetical explanations for the ALJ's inadequate articulation." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Rather, the question for a reviewing court "is now prospective—can [I] say with great confidence what the ALJ would do on remand—rather than retrospective." *Id.*

Based on my review of the entire record, I can say with great confidence that, on remand, the ALJ would find Darge was not disabled through the relevant time period. Even if a reaching limitation were imposed, Darge has not established that she would be incapable of working as an assembler or picker/packer. And "the burden of proof rests on the claimant to establish that she is not capable of performing her past work." *Sevec v. Kijakazi*, 59 F.4th 293, 300 n.35 (7th Cir. 2023) (citations omitted). Darge did not discuss reaching during the hearing with the ALJ, nor has she pointed to a place in the record that even hints at the involvement of reaching in her past work. *See* R. 173–75 (detailing job duties on the work history report and leaving blank the line for number of hours spent reaching each day). She cites the DOT codes for her past relevant work as evidence that reaching is necessary for both positions, but the DOT does not mention reaching in either position description. *See* ECF No. 12 at 13 (citing DOT 806.684-010 & 922.687-058). Darge, who was represented by counsel, also did not question the VE about reaching during the hearing with the ALJ. *See* R. 51–54.

The VE testified that a hypothetical person would not be able to perform Darge's past relevant work if limited to the light exertional level. R. 53. But Darge assumes, without explanation, that a reaching limitation would move her from a medium to a light exertional level. *See* R. 13 (claiming the ALJ found the shoulder impairments contributed to a medium exertional limitation). The regulatory definitions for physical exertion levels—light, medium, and otherwise—do not address reaching. *See* 20 C.F.R. § 404.1567. Because Darge has clearly failed to demonstrate that she is incapable of performing her past relevant work with a reaching limitation, I find the ALJ's explanatory error was harmless.

**III.     Physical Exertion Level**

Though not highlighted as an independent error, Darge briefly attempts to challenge the ALJ's finding that she could perform at the medium exertional level. *See* ECF No. 12 at 13. The ALJ declined to limit Darge to light work because the medical evidence showed "conservative treatment, mild diagnostic findings, and good function on examination, including normal strength, sensation, and gait." R. 29. Since the ALJ cited the same general reasons when analyzing Darge's shoulder impairments, Darge claims that "the same errors relevant to the absence of a reaching limitation undermine the ALJ's conclusion that a medium, as opposed to a light, RFC was warranted." *Id.* However, she fails to explain how those reasons undermine the ALJ's explanatory bridge in the exertional context. Darge claims "that the mild diagnostic findings are not inconsistent with the limitations arising from adhesive capsulitis, and that the claim of 'good function' cannot be reconciled with the findings of significantly reduced range of shoulder motion." ECF No. 12 at 13. But these concerns reveal nothing about Darge's lifting or carrying capacity. *See* 20

11

C.F.R. § 404.1567(b)–(c) (setting forth weight limits for lifting and carrying within the light and medium exertion levels).

While the ALJ should have considered that financial difficulties may have limited Darge's treatment, I am confident that this consideration would not tip the scales from a medium to a light restriction. After all, Darge's treatment was still conservative in nature, she was not without insurance for the entirety of the relevant time, she has not suggested what treatment she would or should have pursued, and she has not pointed to any objective evidence supporting the need for a lifting limitation. In fact, Darge's current contention that she should be limited to light work implies her concession that the ALJ was right not to credit Darge's testimony about not being able to lift more than a gallon of milk. *See* R. 40; 20 C.F.R. § 404.1567(b) (defining light work to involve lifting no more than twenty pounds with frequent lifting or carrying of objects weighing up to ten pounds). Overall, Darge appears to equate shoulder limitations with weightlifting capacity—without substantiating evidence. Therefore, she has not established reversible error with respect to the exertional limit that the ALJ assigned in the RFC.

## CONCLUSION

For all the foregoing reasons, I find that Darge has not demonstrated that the ALJ committed reversible error in denying her disability claim. I therefore **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 30th day of September, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge